WEEKS LAW FIRM PLLC
3839 E. Marshall Gulch Pl.
Tucson, AZ 85718
Tel 520-331-3669
stephenweeksesq@msn.com
Stephen M. Weeks, SBN 020726
Attorneys for Plaintiff

**IN THE DISTRICT COURT**

**IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Miles Parish, an unmarried man, <br><br> Plaintiff, <br><br> vs. <br><br> Troy Lansdale, et al. <br><br> Defendants. | **CASE NO.** 4:17-cv-00186-JGZ <br><br> **Response to Lansdale and Kush's Motion in Limine #1, #5, and #6** <br><br> **HON. Jennifer G Zipps** |

Defendants Lansdale and Kush move this court, *in limine*, to preclude evidence "contained in the Tucson Police Department Internal Affairs investigation" arising from the facts in this case (Dkt 99); Chief Magnus' apology letter to Mr. Parish (Dkt 103); and the Letter of Reprimand issued to Defendant Lansdale (Dkt 104). These Defendants wish to preclude,

1. "Executive Review Material",

2. "Witness Statements [unless used] to refresh recollection or to impeach a witness",

3. "Internal Affairs investigation findings sustaining Parish's complaint or exonerating the officers",

4. Chief Magnus' letter to Mr. Parish, and

5. The letter of reprimand given to Defendant Lansdale.

For the reasons more fully set forth in the following Memorandum of Points and Authorities, Defendants Lansdale and Kush's first, fifth and sixth motions *in limine* should be denied. The City of Tucson has "contingently" joined in Defendant Lansdale and Kush's motions *in limine*. For the same reasons set forth below in the Memorandum of Points and Authorities, this joinder must also be denied.

## MEMORANDUM OF POINTS AND AUTHORITIES

The Defendants' arguments in these three motions *in limine* are all intertwined and based on Fed.R.Evid.[1] Rules 403 and 407. The Defendants concede that the evidence they seek to preclude qualify as business records under Rule 803(6).

**1. Internal Affairs Reports, Conclusions, and Reprimands Generally**

In 42 U.S.C. §1983 cases, internal investigative records are ordinarily admitted into evidence. Internal Affairs investigative reports are highly probative on officers' personal liability, and are generally trustworthy. See e.g. *Wilson v. Beebe*, 743 F.2d 342 (6th Cir. 1984) ("admitting report by police captain that officer's conduct was contrary to department training."); *Perrin v. Anderson* 784 F.2d 1040 (10th Cir. 1986) (Defendant Officers permitted to introduce Internal Affairs report as the report was prepared pursuant to authority granted by law, not as a remedial measure); *Gentile v. County of Suffolk,* 926 F.2d 142 (2nd Cir. 1991) (Investigative reports are highly relevant and admissible to establish *Monell* claims premised on an alleged custom or practice).

**2. Rule 403, Generally.**

---

[1] The evidentiary rule under discussion will simply be referred to as "Rule" throughout this response.

Rule 403 is titled, "Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons." It provides,

> "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

The key requirement is that the evidence may only be excluded if the probative value is **substantially outweighed** by one of the stated reasons.

> "While such evidence may present a danger of unfair prejudice to the defendant, that danger must substantially outweigh the probative value of the evidence before the court may properly exclude it. Fed.R.Evid. 403. As this court stated in *United States v. Mahler*, 452 F.2d 547 (9th Cir.1971), cert. denied, 405 U.S. 1069 (1972), "evidence relevant to a defendant's motive is not rendered inadmissible because it is of a highly prejudicial nature.... the best evidence often is." Id. at 548."

*U.S. v. Robinson*, 922 F.2d 845, 846 (9th Cir. 1990).

Here, the investigative report is relevant for several reasons. First, it establishes that Defendant Lansdale violated TPD's general orders (and the constitution). Second, the investigation's gathered evidence, includes admissions that the practice of blocking open a door, even when it violates the 4th Amendment, was a part of on the job training despite the Fourth Amendments' requirements.

The Defendants' argue that *Maddox v. City of Los Angeles,* 792 F.2d 1408, 1417 (9th Cir. 1986) establishes that it is appropriate to bar the admission of an investigative report pursuant to Rule 403. In its broadest sense, the Defendants are correct. However,

the 9th Circuit only upheld the determination because there was other admitted evidence that touched on the plaintiff's claim and the ruling did not rise to an abuse of discretion.

> "Although this evidentiary issue presents a close question, this court's job is not to reengage in a balancing of the probative value and prejudicial effect. We are limited in our review to determination of whether the district court abused its discretion when it engaged in the balancing process."

*Id.* at 1417-1418.

Quite simply, Rule 403 does not require the court to exclude some of the best available evidence supporting plaintiff's claims. The investigation began 2 days after the events. The investigation is trustworthy. The letter from Chief Magnus arose from the investigation. The letter of reprimand identifies Mr. Lansdale's wrongful conduct. While the Defendants would prefer this evidence not be admissible, none of the Rule 403 exceptions apply.

**3. Rule 407, Generally.**

The Defendants argue that a mandatory investigation into alleged wrongful police conduct is a "Remedial Measure". Rule 407 is titled, "Subsequent Remedial Measures. It provides,

> "When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
> - negligence;
> - culpable conduct;
> - a defect in a product or its design; or
> - a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or — if disputed — proving ownership, control, or the feasibility of precautionary measures."

- 4 -

### a. Investigations are not Remedial Measures

An investigation is not a remedial measure. An after the fact investigation cannot make the injury or harm less likely to occur.

> "It would strain the spirit of the remedial measure prohibition in Rule 407 to extend its shield to evidence contained in post-event tests or reports. It might be possible in rare situations to characterize such reports as 'measures' which, if conducted previously, would reduce the likelihood of the occurrence. . .
>
> "We believe that the policy considerations that underlie Rule 407, such as encouraging remedial measures, are not as vigorously implicated where investigative tests and reports are concerned. To the extent that such policy concerns are implicated, they are outweighed by what the Westmoreland court referred to as the danger of depriving injured claimants of one of the best and most accurate sources of evidence and information." 601 F.Supp. at 68."

*Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron, a Div. of Textron, Inc.*, 805 F.2d 907, 918-919 (10th Cir. 1986).

> "The report was an official inter-office communication required by a standing departmental order and it met all of the requirements for admissibility set forth in the Advisory Committee Beebe's Rule 407 argument has no merit. The report did not recommend a change in procedures following the shooting; it was a report of that incident and nothing more."

*Wilson v. Beebe*, 770 F.2d 578 (6th Cir., *en banc* 1985) (Internal Citation Omitted).

That said, if the report itself references a remedial measure, such as Defendant Lansdale's mandatory training session, that segment should be redacted unless it qualifies as an exception under Rule 407.

> "Assuming, arguendo, that Rule 407 would likewise apply to

- 5 -

> an express warranty action, we agree with the district court that the redacted documents admitted were not remedial measures of the sort excluded by the rule. The Rule prohibits "evidence of ... subsequent measures," not evidence of a party's analysis of its product. . . The fact that the analysis may often result in remedial measures being taken (as occurred here) does not mean that evidence of the analysis may not be admitted."

*Prentiss & Carlisle Co., Inc. v. Koehring-Waterous Div. of Timberjack, Inc.*, 972 F.2d 6 (1st Cir. 1992) (Citing *Rocky Mountain Helicopters, Inc.* supra.)

### b. The Investigative Results are Admissible for Impeachment Purposes

The report concluded and recommended that Defendant Lansdale receive a Letter of Reprimand and additional training on 4th Amendment issues. These issues are typically remedial measures subject to Rule 407. However remedial measures are admissible for impeachment purposes. Defendants are directly denying all wrongdoing, including the claim that Defendant Lansdale's doorway foot placement violated the 4th Amendment. (Dkt. 144 and Dkt. 145). All Defendants are affirmatively arguing the exact opposite, that he did not violate the 4th Amendment. As is clear from the investigation and its conclusions and sanctions even the Defendants have all admitted it was a 4th Amendment violation. Accordingly, these reports are admissible for impeachment purposes.

### c. The Apology Letter and Letter of Reprimand are Admissible for Impeachment.

This trial involves multiple parties. Defendants do not want Chief Magnus' letter admitted into evidence. Defendants do not want Defendant Lansdale's letter of reprimand admitted into evidence. Their arguments are based on the theory that they are both

- 6 -

hearsay and not an admission against party interests as to Defendants Lansdale and Kush. The letters **are** an admission against party interests as to Mr. Parish's *Monell* claim against the City of Tucson. If the Defendants do not need to be impeached, then the evidence will be unnecessary. If they insist that there was no wrongdoing whatsoever, as they currently argue, then they are admissible.

The correct course of action if the Defendant's desire it, is a limiting instruction from the Court, limiting consideration of the letter only toward the City's liability. To the extent that Defendants' Lansdale and Kush also believe it could cause confusion, that can be remedied by other evidence, such as the internal affairs report and its conclusions.

**4. Conclusion**

It is not surprising that the Defendants wish to preclude this evidence. However, this evidence is highly relevant, is trustworthy, and will help guide the jury in finding a just verdict. The evidence establishes Defendant Lansdale's conduct violated multiple general orders and the 4th Amendment. The evidence is admissible, and the Defendants' motions should be denied.

Frankly, the Defendants' motion *in limine*'s #5 and 6 are little more than an attempt to support bifurcation, which Plaintiff opposes as it will needlessly extend the trial and require multiple witnesses to be available on multiple days, during a pandemic.

DATED this  12th  day of October, 2020.

                                               /s/ Stephen M. Weeks
                                         Stephen Weeks, Esq.
                                         Attorneys for Plaintiffs

A copy of the foregoing was electronically filed
and served this 12th day of October, 2020, to:

Sarah Pace, Esq.
Tucson City Attorney's Office
PO Box 27210
Tucson, AZ 85726
Attorney for Defendants City of Tucson,
Bradley Kush, Christopher Magnus,
and Roberto Villasenor, in his Individual Capacity

Daryl Audilett
Audilett Law PC
335 N. Wilmot Road, Suite 500
Tucson, AZ 85711
Attorney for Troy Lansdale