**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Miles Parish, | No. CV-17-00186-TUC-JGZ |
| Plaintiff, | **ORDER** |
| v. | |
| Troy Lansdale, et al., | |
| Defendants. | |

Pending before the Court is a joint motion to bifurcate trial by Defendants Troy Lansdale, Bradley Kush, and the City of Tucson. (Doc. 111.) Plaintiff Miles Parish opposes the motion to bifurcate. (Doc. 150.)

Also pending before the Court are Lansdale and Kush's motions in limine to preclude: (1) Internal Affairs Investigation Materials (Doc. 99); (2) Tucson Police Department (TPD) General Orders (Doc. 100); (3) a letter from the Chief of TPD to Plaintiff sustaining Plaintiff's complaint (Doc. 103); and (4) a letter of reprimand from TPD to Lansdale (Doc. 104).

In contingent joinders, the City of Tucson agrees that the motions in limine should be granted if the trial is bifurcated. (Docs. 115, 116, 119, 120.) The City opposes the motions in limine if the Court denies the motion to bifurcate because the City intends to introduce the evidence at issue in support of its defense. (Docs. 138, 140, 141, 142.)

Plaintiff opposes the motions in limine. (Docs. 150, 154, 155.) Plaintiff recognizes that some of the evidence that Defendants seek to preclude is only relevant to the City's

defense, but Plaintiff requests that the Court deny the motion to bifurcate and provide limiting instructions to inform the jury how it can or cannot consider the various types of evidence.

The Court heard argument on the motions on April 12, 2021, and May 5, 2021. Having considered the parties' written submissions and arguments, the Court will grant Defendants' joint motion for separate trials before the same jury, with Phase One of the trial addressing the liability of the individual officers and Phase Two addressing the City's liability on Plaintiff's *Monell* claims. The Court will grant the Motions in Limine in part, to the extent set forth in this Order.

### 1. Bifurcation

Rule 42(b) of the Federal Rules of Civil Procedure permits a court to order a separate trial of separate issues for any one of the following reasons: (1) convenience, (2) to avoid prejudice, or (3) to expedite and economize. Fed. R. Civ. P. 42(b); *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 961 (9th Cir. 2001). District courts have broad discretion in deciding whether to bifurcate trial. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) (citation omitted). "The party seeking bifurcation has the burden of demonstrating that judicial economy would be served and that no party would be prejudiced by separate trials, based on the circumstances of the individual case." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, No. CV-03-0597-PHX-MHM, 2007 WL 3208540, at *1 (D. Ariz. Oct. 30, 2007) (citation omitted).

The determination whether to bifurcate trial is made on a case-by-case basis guided by consideration of a variety of factors including: (1) whether a separation of the issues for trial will expedite disposition of the action; (2) whether separation will conserve trial time and other judicial resources; (3) whether separation will be likely to avoid prejudice to any party at trial that may occur in the absence of separation; and (4) whether the issues are essentially independent of each other so that there will be no need to duplicate the presentation of significant areas of the evidence in the separated proceedings. *Thorndike ex rel. Thorndike v. Daimlerchrysler Corp.*, 220 F.R.D. 6, 7–8 (D. Me. 2004) (citations

omitted); *K.W. Muth Co. v. Bing-Lear Mfg. Group, LLC*, No. 01–CV–71925, 2002 WL 1879943, *4 (D.C. Mich. 2002); *see also* 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2388 (2d ed. 2003) ("The district judge must weigh a variety of facts, such as whether one trial or separate trials best will serve the convenience of the parties and the court, avoid prejudice, and minimize expense and delay. The major consideration, of course, must be which procedure is more likely to result in a just and expeditious final disposition of the litigation.") (footnotes omitted).

Considering the applicable factors, the Court finds that bifurcation is appropriate and will avoid undue prejudice to the individual defendants, may conserve trial time and resources, and that separation of the determination of liability into two phases will not prejudice any party. The liability issues of the individual defendants and the municipal defendant can be determined, for the most part, independent of each other. The parties have recognized this. In the Joint Proposed Pretrial Order, the parties agree that to prevail on the *Monell* claim, Plaintiff must prove, in addition to other elements, that the "acts of officer Lansdale or Kush deprived Mr. Parish of his 4th or 14th Amendment rights under the United States Constitution." (Doc. 92, p. 6.) If the jurors conclude that the individual defendants did not violate Plaintiff's constitutional rights, Plaintiff's claims against the City will necessarily fail. Bifurcation will serve the interest of judicial economy.

In addition, in light of the nature of the evidence which is admissible against the City, but not admissible against the individual defendants (as discussed in detail below), bifurcation will minimize potential prejudice to the individual defendants. Although the Court believes that jurors generally do their best to follow their instructions, the Court concludes that it would be difficult for jurors to disregard, in assessing the individual officers' liability, the fact that Officer Lansdale received a letter of reprimand for the conduct at issue in this case and that Plaintiff received an apology from the Chief of TPD, two pieces of evidence which are only admissible against the City. Finally, separation of the claims will not prejudice Plaintiff, or any other party[1].

---

[1] The Court does not find that Plaintiff's assertion of prejudice if trial is bifurcated

### 2. Motions in Limine[2]

#### a. Letter from Chief Magnus and Letter of Reprimand

The parties agree that the Letter from Chief Magnus and the Letter of Reprimand to Officer Lansdale are relevant to Plaintiff's claims against the City, but not relevant to Plaintiff's claims against the individual officers. The Court will therefore grant Officer Lansdale and Kush's motions in limine to preclude introduction of the two letters during Phase One of the trial. (Docs. 103, 104.)

#### b. TPD General Orders

The TPD General Orders are referenced in the Internal Affairs Investigation Materials and the City seeks to introduce the orders in its defense. Defendants Lansdale and Kush seek to preclude all witnesses, including experts, from mentioning or referring to TPD General Orders. (Doc. 100.)

Although Plaintiff seeks admission of the Internal Affairs Investigative Reports which refer to the Orders, Plaintiff's counsel stated at oral argument that the General Orders themselves need not be admitted and to do so would cause confusion. Counsel also acknowledged that the Orders are not relevant to Plaintiff's section 1983 claims.[3]

---

outweighs the potential prejudice to the individual Defendants absent bifurcation. Plaintiff asserts he will be prejudiced because the trial may last a few days longer, and he will have to recall witnesses. While this may inconvenience Plaintiff, bifurcation will prevent the introduction of irrelevant and unfairly prejudicial evidence on the issue of individual officer liability.

[2] A motion in limine is a request for guidance by the court regarding an evidentiary question. The trial court may, within its discretion, provide such guidance by making a preliminary ruling with respect to admissibility. *Nowell v. City of Cincinnati*, No. 1:03-cv-859, 2006 WL 2619846, *2 (S.D. Ohio Sept. 12, 2006) (citing *United States v. Luce*, 713 F.2d 1236, 1329 (5th Cir. 1983), *aff'd* 469 U.S. 38 (1984)). Should the trial court render a decision on a motion in limine, the court may change its ruling for whatever reason, when the evidence is actually offered or objected to at trial. *Id.*; *see also Luce v. United States,* 469 U.S. 38, 41-42 (1984) ("[T]he district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.")  A ruling on a motion in limine is an advisory opinion that is subject to change as the trial unfolds. *Nowell,* 2006 WL 2619846, *2.

[3] At oral argument Plaintiff's counsel stated that the Orders could be relevant to the "standard of care" that the officers were required to abide by on Plaintiff's state law claims.

Based on the parties' filings and statements, the Court will grant in part Officer Lansdale and Kush's motion in limine to preclude introduction of the TPD General Orders during Phase One of the trial.  (Doc. 100.)  Introduction of the Orders is precluded during Phase One, except for the references contained in the Internal Affairs Investigation findings, as discussed in section 2(c).

### c. Internal Affairs Investigation Materials in Phase One

Under Rule 803(8), "[a] record or statement of a public office" is admissible "if . . . it sets out . . . in a civil case . . . factual findings from a legally authorized investigation; and . . . the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Civ. P. 803(8). Rule 803(8) "expressly contemplates the admissibility of investigative reports such as the Internal Affairs Reports that 'result[] from an investigation made pursuant to authority granted by law.'" *Mason v. Faul*, No. 12-2939, 2018 WL 1097092, *1 (W.D. La. Feb. 28, 2018); *see also Nowell v. City of Cincinnati*, No. 1:03-cv-859, 2006 WL 2619846, *3 (S.D. Ohio Sept. 12, 2006) (finding admissible under Rule 803(8) an internal affairs investigation report setting forth findings and conclusions concerning plaintiff's allegations that defendants acted improperly when they detained him and that report was relevant to plaintiff's claims that he was arrested without probable cause and that the officers used excessive force). Rule 803(8)'s "exception to the hearsay rule for public investigatory reports containing 'factual findings,' extends to conclusions and opinions contained in such reports." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 156 (1988).

The findings of the Internal Affairs Investigation are relevant and admissible under Rule 803(8), assuming Plaintiff can satisfy the foundational requirements of the rule. *See Mason*, 2018 WL 1097092, *1; *Nowell*, 2006 WL 2619846, *3. The Internal Affairs Investigative Report includes findings of Sergeant Petersen, Captain Graves, Lieutenant

---

Plaintiff's remaining state law claims, however, allege intentional torts, not negligence. Unlike claims of negligence which require proof of a duty requiring a defendant to conform to a standard of care, Plaintiff's intentional tort claims do not require such proof. *See Ryan v. Napier*, 245 Ariz. 54, 59 (2018).

Doggett, and Bureau Commander Batista that Officer Lansdale left his foot in the doorway of Plaintiff's house without legal justification after Plaintiff asked Lansdale to remove his foot. The report also includes findings that officers did not use excessive force in arresting Plaintiff. These findings have a "tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. "The language of Rule 401 is deliberately inclusive; the intent of the rule's drafters was to admit 'evidence having any tendency' to support plaintiffs' claim." *Gentile v. Cnty. of Suffolk*, 129 F.R.D. 435, 447 (E.D.N.Y. 1990), *aff'd,* 926 F.2d 142 (2d Cir. 1991).

The supporting audio or written recordings of witness interviews do not fall within the scope of Rule 803(8). *See e.g. Nowell*, 2006 WL 2619846, at *5 (witness statements that do not independently qualify for an exception to the hearsay rule will not be admitted); *Sussel v. Wynne, No. 05*-00444-ACK-KSC, 2006 WL 2860664, *2 (D. Haw. Oct. 4, 2006) (collecting cases). However, witness statements contained in the findings, as support for the findings, are admissible. *Owens v. City of Philadelphia,* 6 F.Supp.2d 373, 376 n.3 (E.D. Pa. 1998) (statements in investigative report by eyewitnesses to the incident were admissible under Rule 803(8) because they were "iterated in support of the investigator's conclusion that Russell (among others) 'failed to take decisive action,'" thus "plac[ing] them under the rubric of 'factual findings' within contemplation of the rule." ). The Court further finds that statements included in the findings and conclusions are not hearsay because they are not cited for the truth of the matter asserted, but to show the basis for the findings and conclusions.

The Court rejects arguments that Rule 407 bars admission of the Investigative Reports' findings in Phase One. Rule 407 does not preclude subsequent remedial measures taken by other persons. *See Pau v. Yosemite Park and Curro Co.*, 928 F.2d 880, 888 (9th Cir. 1991). Rule 407 is based on the policy of encouraging potential defendants to remedy hazardous conditions without fear that their actions will be used as evidence against them. *Id.* Here, Defendants Lansdale and Kush did not take any remedial measures. The Internal

Affairs investigation was not initiated by or undertaken by them.

Defendants rely on *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1096) and *Mahnke v. Wash. Metro. Area Transit Auth.*, 821 F.Supp.2d 125 (D.D.C. 2011) in support of their Rule 407 argument. These cases are inapposite. In *Maddox*, the Ninth Circuit held that "Internal Affairs investigation and measures taken by the City were remedial measures taken after the incident" and thus, inadmissible against the City. *Maddox*, 702 F.2d at 1417. Although the *Maddox* court found that the defendant officer's statements during the investigation were not admissible against him, the court did so on the basis of Rule 403, not Rule 407. *Id.* Similarly, in *Mahnke*, the court precluded introduction of a subsequent remedial measure against the transit authority, but the transit authority, unlike the individual officers here, had conducted the internal investigation and disciplinary proceedings. *Mahnke*, 821 F.Supp.2d at 150-52.

The Court also concludes that Rule 403 does not warrant exclusion of the Reports. The probative value of the findings is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See Shepherd v. Dallas*, 591 F.3d 445, 457 (5th Cir. 2009) (in suit against county alleging constitutional violations concerning jail's failure to administer medication, Rule 403 did not preclude admission of DOJ report regarding the county's provision of medical care at the jail and the constitutionality of jail conditions). Although in this case the Internal Affairs Report concludes that Officer Lansdale improperly used his boot to keep the Plaintiff's door open (an issue Defendants contend is central to their defense and which must be decided by the jury), Officer Lansdale testified at his deposition that he intentionally placed his foot in the door for precisely that reason. (*See* Doc. 42, p. 11, citing Officer Lansdale's deposition at 49:5-22.) Moreover, the report also concludes that the officers did not act improperly in arresting Plaintiff.

"[T]he balancing test of Rule 403 should not be misused in such a way that 'would end the presumption that evaluative reports are admissible hearsay under Rule 803(8)[]." *Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 201 (5th Cir. 1992). Here, the

investigative findings are probative of Plaintiff's claims. The danger of unfair prejudice to the individual officers is minimal.

The Court does conclude that Rule 403 warrants the exclusion of references in the Reports to discipline (recommended, adopted, and/or imposed) in Phase One. How Officer Lansdale was disciplined is not probative of Plaintiff's claims.  Thus, text referring to disciplinary determinations must be redacted in Phase One.[4]

Although the Internal Affairs Reports reference violations of TPD General Orders and violation of such Orders would not provide a basis for a 1983 claim, Rule 403 does not require redaction of these references. The references to the General Orders are minimal; the language of the General Orders mirrors constitutional law requirements; and any prejudice or potential juror confusion caused by these references can be addressed and remedied through jury instructions.  Notably, in addition to receiving instructions on the legal standards to apply in evaluating Plaintiff's claims, the jury will also receive instruction about the evidentiary value of the Report. *See Perrin v. Anderson*, 784 F.2d 1040 (district court's limiting instruction regarding Shooting Report's conclusion

---

[4] The text addressing disciplinary actions and the basis for such actions in Exhibit 1 states:

> It is my recommendation that the Sustained Violations of Officer Lansdale rise to the level of a Violation Type B in that his actions did not involve a misuse of authority or an ethical offense and has a minimal adverse impact on public safety or the professional Image of the Department.  In regards to the discipline level, I recommend he be given the presumptive sanction of a Written Reprimand.  Officer Lansdale was acting in good faith when he placed his boot into the door threshold and although I disagree with his action, I believe he was trying to work in a safe and effective manner. He did not knowingly misuse his authority. Additionally, Sgt. Faulk confirmed that this practice was common amongst some officers and that in his opinion the actions were appropriate.  Also, the decision to arrest and book was discussed with and confirmed by on scene supervisors.  At that time, it was determined that probable cause for an arrest existed in this case and he was so charged.

(Doc. 99-1, pp. 8-9.) The officers signing off on the recommendations also reference discipline which must be redacted.

The text addressing disciplinary actions and the basis for such actions in Exhibit 2 starts with the sentence, "In response to my findings for the use of force, I recommend that officers do not receive discipline." (Doc. 99-1, p.13.) The text ends, in Exhibit 2, with the sentence, "This is Officer Lansdale's first Type C violation in three years." (*Id*.)

- 8 -

concerning propriety of defendants' conduct, "mitigated any prejudice the report may have had.").

Thus, for the foregoing reasons,

**IT IS ORDERED:**

1. Defendants' "Joint Motion in Limine #1: for Separate Trials before the Same Jury on Individual Officer Liability (Phase One), and *Monell* Liability (Phase Two)" (Doc. 111) is GRANTED.

2. Defendants Lansdale and Kush's "Motion in Limine No. 1 Regarding Preclusion of Internal Affairs Investigation Materials" (Doc. 99) is GRANTED IN PART and DENIED IN PART as to Phase One of the trial as stated within the body of this Order.

3. Defendants Lansdale and Kush's Motion in Limine No. 2 to Preclude TPD General Orders (Doc. 100) is GRANTED as to Phase One of the trial, to the extent stated in this Order.

4. Defendants Lansdale and Kush's Motion in Limine No. 5 to Preclude Letter from TPD to Plaintiff Advising that Plaintiff's Complaint was Sustained (Doc. 103) is GRANTED with regard to Phase One of the trial.

5. Defendants Lansdale and Kush's Motion in Limine No. 6 to Preclude the TPD Letter of Reprimand Given to Defendant Lansdale (Doc. 104) is GRANTED with regard to Phase One of the trial.

Dated this 6th day of May, 2021.

_____
Honorable Jennifer G. Zipps
United States District Judge